FILED

2026 Jun-05 PM 01:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| LA'KETTA D. MATHIS, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| vs. | ) Civil Action No. 4:25-cv-840-CLS |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

La'Ketta D. Mathis commenced this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of an Administrative Law Judge ("ALJ") and, thereby, denying her claim for supplemental security income benefits.  For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

### I.  STANDARDS OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and, whether correct legal standards were applied.  *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).  The court may not "decide the facts anew, reweigh the evidence,

or substitute [its] judgment for that of the Commissioner." *Winschel v. Commissioner*

*of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (alteration supplied).

## II.  DISCUSSION

The ALJ found that claimant had the severe impairments of lumbar

degenerative disc disease, osteoarthritis, and obesity.[1]  Even so, the ALJ concluded

that claimant retained

> the residual functional capacity to perform sedentary work as defined in
> 20 C.F.R. § 416.967(a) except as a part of the job requirements: The
> claimant can lift and carry ten pounds occasionally and frequently, stand
> and walk in combination for three hours in an eight-hour day, and sit for
> six hours in an eight-hour day.  The claimant would not climb ladders,
> ropes, or scaffolds; crawl; or perform around hazards (such as
> unprotected heights or dangerous machinery), or in concentrated
> exposure to extreme hot temperatures, wetness, or vibration.  The
> claimant can occasionally climb ramps or stairs, balance, stoop, kneel,
> or crouch.  The claimant needs the use of a cane for standing or walking.

Tr. 79.  Based upon the testimony of the vocational expert, the ALJ concluded that

there are a substantial number of jobs in the national economy which claimant is

capable of performing, including assembler, lens inserter, and egg processor.

Accordingly, the ALJ found that claimant had not been under a "disability" as defined

---

[1] Tr. 76.

in the Social Security Act.[2]

Claimant contends that the Commissioner's decision is neither supported by substantial evidence, nor in accordance with applicable legal standards. Specifically, she asserts that: (1) the ALJ failed to consider her hypertension; (2) the vocational expert's testimony that there were a significant number of jobs in the national economy that claimant could perform is not supported by substantial evidence; and (3) the Appeals Council improperly denied review of the ALJ's decision in view of her newly submitted medical records.[3]

## I. DISCUSSION

### A.    Claimant's Hypertension

Claimant argues that the ALJ failed to consider her hypertension and its effects when formulating the residual functional capacity.  Notably, however, claimant did not list hypertension in her application for benefits as a condition that limited her ability to work.[4]  While claimant testified during the administrative hearing that she had been prescribed medication for hypertension, and monitored her blood pressure daily, she did not explain how, if at all, hypertension limited her ability to work.[5]

---

[2] Tr. 85.

[3] Doc. no. 12 (Plaintiff's Opening Brief), at 2.

[4] Tr. 429, 475.

[5] *See* tr. 105.

Even so, the ALJ stated that he considered "*all* the claimant's medically determinable impairments," in order to determine her residual functional capacity.[6] When reviewing claimant's medical records, the ALJ specifically noted that, on one occasion, claimant was treated in the emergency department for hypertension and shortness of breath, but that she was treated only with medications.[7] While there are instances in the record indicating that claimant's blood pressure was elevated when she sought treatment for other medical conditions, there is no evidence that hypertension limited her ability to work. *See Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir. 2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work.").

**B.   Vocational Expert Testimony**

Claimant also contends that the ALJ erred when relying upon the vocational expert's testimony. Specifically, she argues that the vocational expert's testimony that there were 154,000 jobs in the national economy which she was capable of performing (*i.e.*, 95,000 assembler jobs, 27,000 lens inserter positions, and 32,000 egg processor jobs) was unreliable. Instead, she urges the court to refer to the Bureau of Labor Statistics Occupational Requirements Survey data, and to find based upon

---

[6] Tr. 77.

[7] Tr. 80.

that data that the number of jobs which claimant could perform is far less than the number accepted by the ALJ on the basis of the vocational expert's testimony.  In that event, the ALJ's decision would not be supported by substantial evidence.

Where, as here, the ALJ finds that a claimant cannot perform her past work, the burden of proof shifts to the Commissioner to show that a significant number of jobs which the claimant still is capable of performing exist in the national economy.  *See Goode v. Commissioner of Social Security*, 966 F.3d 1277, 1278-79 (11th Cir. 2020); 20 C.F.R.  § 404.1560(c)(1), 416.960(c)(1).  As the Eleventh Circuit observed in *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."

An ALJ may consult with a vocational expert to make the required determination.  *Goode*, 966 F.3d at 1280.  The testimony of a vocational expert "may count as substantial evidence [of the number of jobs in the national economy which a claimant is capable of performing] *even when unaccompanied by supporting data*." *Biestek v. Berryhill*, 587 U.S. 97, 105 (2019) (alteration and emphasis supplied).  Even so, an ALJ's testimony about the existence of jobs in the national economy which a claimant is capable of performing is not deemed to be supported by substantial evidence *when it is based on vocational expert estimates that the claimant*

*has challenged*, and the vocational expert either used a significantly flawed methodology when reaching his conclusions, or provided without explanation an estimate that defied common sense. *Goode*, 966 F.3d at 1281-84; *Viverette v. Commissioner of Social Security*, 13 F.4th 1309, 1319 (11th Cir. 2021).

In this instance, however, claimant did not object to the vocational expert's qualifications, challenge his testimony, or present any contrary jobs data, either to the ALJ or to the Appeals Council. Therefore, the court need not consider the jobs data evidence submitted by claimant for the first time here.

Claimant also asks the court to take judicial notice of the Occupational Information Network ("O*Net"), developed by the United States Department of Labor.[8] According to the Social Security Administration website:

> The Department of Labor (DOL) developed the DOT in the late 1930s to match jobseekers to jobs. For almost 50 years, the DOT has been our primary source for occupational information. The DOL discontinued updating the DOT in 1991 and replaced it in 1998 with another job placement tool, the Occupational Information Network (O*Net). *We studied whether O*Net could take the DOT's place in our disability adjudication process as our primary source of occupational information, but we found it does not describe the requirements of occupations in a manner needed for claims adjudication.*

---

[8] "The O*Net system is maintained by a regularly updated database of occupational characteristics and worker requirements information across the U.S. economy. It describes occupations in terms of the knowledge, skills, and abilities required, as well as how the work is performed in terms of tasks, activities, and other descriptors." *O*Net*, https://www.dol.gov/agencies/eta/onet (last visited May 29, 2026).

*Occupational Information System Project FAQ's*, https://www.ssa.gov/disability research/ois_project_faqs.html (last visited May 29, 2026) (emphasis supplied). There is no date given for replacement of the woefully outdated Dictionary of Occupational Titles for the adjudication of disability claims, although at one point it apparently was anticipated to be operative during 2020. *See Chavez v. Berryhill*, 895 F.3d 962, 965 (11th Cir. 2018) ("The agency has announced that it anticipates replacing the DOT with the Occupational Information System in 2020."). In any event, as stated above, the Social Security Administration has rejected use of O*Net for adjudication of claims. Moreover, the regulations do not mention O*Net as a source of reliable data, but specifically state that the Commissioner will take administrative notice of the DOT. *See* 20 C.F.R. § 404.1566(d)(5); *Tisdale v. Commissioner of Social Security*, 806 F. App'x 704, 711 (11th Cir. 2020). For those reasons, the court declines to take judicial notice of job data from O*Net.

Accordingly, the court concludes that the ALJ's finding that a significant number of jobs which claimant is capable of performing exist in the national economy is supported by substantial evidence.

## C. The Issue of Whether the Appeals Council Erred in Failing to Grant Review of Post-Hearing Evidence

Claimant's remaining contentions — that the Appeals Council should have

granted review and that the Commissioner's decision therefore is not supported by substantial evidence — are addressed together.

Claimants are permitted to present new evidence at each stage of the administrative process, including before the Appeals Council. *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council will review a case if it

> receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 416.1470(a)(5).

The Appeals Council need not "provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Commissioner, Social Security Administration*, 771 F.3d 780, 783 (11th Cir. 2014). However, the record must, at a minimum, indicate that the Appeals Council adequately evaluated whether a claimant's new evidence is material and chronologically relevant. *McCullars v. Commissioner, Social Security Administration*, 825 F. App'x 685, 692 (11th Cir. 2020) (*per curiam*).

In this case, claimant submitted additional medical records to the Appeals Council.[9] For purposes of this appeal, however, claimant challenges only the Appeals

---

[9] *See* Tr. 2 (Notice of Appeals Council Action)

Council's treatment of the following medical records: Premier Pain and Spine treatment records, dated March 23, and April 8, 2024;[10] treatment records from Doctors Med Care of Gadsden, P.C., dated November 23, 2023 and February 1, 2024;[11] and, an independent medical evaluation performed by Pascual Herrera, Jr., M.D. on November 14, 2024.[12]

With respect to those and other medical records submitted by claimant, the Appeals Council stated, after listing the specific medical records under consideration, that "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision."[13]  While that is not much of an explanation, it is sufficient under Eleventh Circuit precedent.  *See McCullars*, 825 F. App'x at 692 (holding that the Appeals Council's statement that newly submitted treatment records did "not show a reasonable probability that they would change the outcome of the decision" meant that the records were not deemed to be "material.").  Therefore, the Appeals Council did not err in rejecting claimant's newly submitted evidence.

Moreover, that conclusion is supported by substantial evidence.  As discussed

---

[10] Tr. 129, 134.

[11] Tr.265-67, 269.

[12] Tr. 9-13.

[13] Tr. 2.  With respect to other medical records submitted by claimant, the Appeals Council determined that the "additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before April 29, 2024."  *Id.* Claimant does not challenge that conclusion.

above, claimant did not list hypertension as a work-limiting condition in her application for benefits, and she did not otherwise present evidence that her hypertension limited her ability to work.  The treatment records from Premier Pain and Spine and Doctors Med Care of Gadsden, P.C., indicate that claimant's blood pressure was elevated during each of the visits, but, with the exception of the November 11, 2023 treatment record, they also show that claimant did not complain of shortness of breath or excessive fatigue.  Moreover, the November 11th treatment record notes that claimant's blood pressure was 117/85, which is only mildly elevated, and also indicates that claimant was a daily smoker.[14]

Dr. Herrera evaluated claimant on November 14, 2024.  His report indicates that claimant's blood pressure on that date was 142/80, and that her "chief complaints" related to joint pain in her lower back, right hip/leg and hands.[15]  Dr. Herrera also reviewed claimant's medical records.[16]  Based upon those records and his physical examination of claimant, Dr. Herrera completed a "Physical Capacities Form" that included the following assessment of claimant's work-related limitations: claimant could sit upright in a chair for less than 30 minutes; stand for less than 15 minutes; and lie down, sleep or sit with legs propped for four hours of an 8-hour

---

[14] Tr. 269.
[15] Tr. 9-10.
[16] Tr. 12.

workday.  He also opined that claimant would be off task 50% of an 8-hour workday, and that she could be expected to fail to report to work on 24 days of a 30-day period.[17]  Dr. Herrera listed the conditions causing the limitations as morbid obesity, corticosteroid-accelerated osteoarthritis, bilateral hip pain, neuralgia, and chronic edema, but did not provide further justification for the restrictions.  Notably, Dr. Herrera did not include hypertension as a condition that limited claimant's physical capacity to perform work.

In contrast, the ALJ determined that claimant retained the capacity to perform a limited range of sedentary work — *i.e.*, less than the minimum exertional level — as described in the residual functional capacity finding, based upon "some of the claimant's own subjective allegations, the relatively benign objective findings, the conservative degree of treatment the claimant received, the claimant's response to treatment, and the record as a whole."[18]  Dr. Herrera's conclusions are not consistent with the record and, therefore, the Appeals Council did not err in finding that his opinion, and the other newly-submitted medical records, did not show a reasonable probability that the outcome of the decision would change.

---

[17] Tr. 13.

[18] Tr. 83.

11

## II.  CONCLUSION

For all of the foregoing reasons, this court concludes that the Commissioner's decision that claimant was not disabled is supported by substantial evidence, that it is in accordance with applicable law, and it is due to be affirmed. A judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 5th day of June, 2026.

_____
Senior United States District Judge

12